## SOLICITATION OF POLITICAL CONTRIBUTIONS FROM CIVIL SERVICE EMPLOYEES.

Common Pleas Court of Franklin County.

STATE OF OHIO .V. WILLIAM FINLEY AND A. V. ABERNATHY.

Decided, April 13, 1914.

*Criminal Law—Sufficiency of Indictment Charging Solicitation of Political Contributions—Scienter—Wilful Doing and Doing with Knowledge—Construction of the Words "During" and "Concerned."*

1. Inasmuch as the wilful doing of a thing involves doing it with knowledge, it is not necessary that an indictment charging the wilful solicitation of contributions from employees in the classified service of the state should allege the solicitation was done with knowledge that the persons so solicited were in the classified service.
2. An allegation that certain persons were in the employ of the state "during the month of January" will be construed to mean that they were so employed throughout the month of January.
3. The allegation that the defendants were "concerned" in the solicitation of certain contributions from civil service employees for political purposes, can not be so limited in meaning as to constitute a mere statement that they were interested in or anxious about said contributions, but is a charge that they had a part in and were joint actors in such solicitation.

*Timothy S. Hogan*, Attorney-General, and *Edward C. Turner*, for plaintiff.

*Booth, Keating, Peters & Pomerene*, contra.

DILLON, J.

A motion is made to quash the indictment in this case. Similar motions have been made to a number of other indictments which are in the same form, and the decision in this case will be the decision in all.

The defendants in these cases have been indicted under that part of the act of April 28th, 1913 (103 O. L., 698-713), and especially Section 23 thereof, which forbids any person from soliciting directly or indirectly, or being in any manner concerned in soliciting an assessment, contribution or payment from any officer or employee in the classified service of the state, in behalf of any political party or for any candidate for public office. This motion to quash partakes also of the nature of a demurrer, either being proper, and is based upon a number of grounds:

1. It is claimed that the indictment does not state that the defendants knew that the parties solicited were in the classified service.

2. That the indictment does not state that the parties solicited and paying the money were in the classified service at the time of the solicitation.

3. That charging the defendants with being concerned with the solicitation simply charges them with a frame of mind or a condition of mind and does not charge them with any act of omission or commission.

4. That the indictment as a whole is too indefinite and vague and does not sufficiently inform the defendants of the nature of the charge against them.

Section 10 of the Bill of Rights provides among other things that a person indicted, as in this case, shall have the right to demand the nature and cause of the accusation against him, and this clause has received an interpretation which, in general terms is the same throughout the cases, beginning with the case of *Lamberton* v. *State,* 11 Ohio, 282, and followed in general terms from that time to this. The doctrine announced by the decisions in this state and which seems to be unchallenged, is that a criminal charge should be preferred with such certainty and precision as will reasonably apprise the party charged of that which he

may expect to meet and be required to answer, so that the court and jury may know what they are to try and the court may determine without unreasonable difficulty what evidence is admissible; also that the record to be made will be sufficiently definite to make it clear of what the party has once been put in jeopardy. *Du-Brul* v. *State,* 80 O. S., 52.

With the foregoing general proposition of law before us, the conflict of cases, or the apparent conflict of cases, simply lies in the application of this wholesome rule to each individual case. It, therefore, is a matter purely of fairness to the defendant and is based upon most wholesome policy and sound reason; and it becomes the duty of the court to determine whether or not the indictments in these cases meet the requirement of the foregoing general rule.

It is first claimed that the indictment does not charge knowledge on the part of the defendant, *i. e.,* that they knew that these parties solicited were in the classified service. The statute, in words, does not make knowledge one of the essential elements of the crime. But assuming that this belongs to the class of cases where scienter is essential, it will be observed that the indictment charges that the defendants were willfully concerned in soliciting these contributions in money for a political party and from six certain employes in the classified service of the state, naming them, and in certain amounts.

Section 28 of the act reads that "Whoever wilfully violates any provisions of this act shall be deemed guilty," etc. This section undoubtedly covers the point now under discussion, and counsel have not devoted much argument to this point, it being doubtlessly conceded that the wilful doing of a thing involves the doing of it with knowledge.

The next point involved is that the indictments do not state that the parties solicited were in the classified service at the time of the solicitation. The indictment, in respect to this, charges that "During the month of January," 1914, certain persons, naming them, were each employes of the state of Ohio in the office of the state tax commission, and were in the classified service of the civil service of the state; and that on or about the

15th day of that month, the said defendants then and there were unlawfully and wilfully concerned in soliciting certain contributions in money from them, etc. The decision turns upon the construction of the word "during." Applying the common sense rule which must be adopted in all such cases, of construing words in their ordinary and usual sense as construed from the general context, it seems clear to the court that this allegation means that they were such employees, throughout the month of January. The word "during" of course, is susceptible of a number of interpretations. If we say that "during his stay in Europe, John Smith wrote a book," we do not necessarily mean that he began on the first day and ended on the last day of his stay. But if the sentence of a court be that a man be confined in the penitentiary during the remainder of his natural life, it means throughout his natural life. In other words, I construe the language of the indictment in this respect not to mean that at some time in the month of January the parties were employees, but that throughout the month of January they were such employees.

The main contention in the case, however, is that part of the indictment which alleges that the defendants "were then and there unlawfully and wilfully concerned in soliciting certain contributions in money for a political party, to-wit, the said Democratic Party, from the said M., W., C., C. and K. employees of the said state of Ohio in said classified service of the civil service of the state as aforesaid in the sums following, to-wit: From the said M., the sum of $14, from the said W., the sum of $18, from the said Mc. the sum of $9, from the said C. the sum of $9, from the said C. the sum of $10, and from the said K. the sum of $7.50. The full names of the parties alleged to have been solicited are set forth. The contention of counsel for the defendants is that the state should set forth in what way and in what manner the said defendants were wilfully concerned in the solicitation, and secondly that the word "concerned" does not charge any act of commission or omission, but that it simply charges that the defendants were anxious or were interested, etc., in what was going on. As to this last contention, I think little

need be said. It is quite true that in the passive voice, "to be concerned" does have, among other meanings, the meaning of the one claimed, to-wit, that of being anxious, interested, as a mother may be concerned about her child. Indeed, one may be interested and anxious and in that sense concerned in a political assessment and yet, by no act on his part, be a party to it. In the active voice the word "concern" rarely receives the meaning which it has here in the passive voice. And there can be no doubt, whatever, that applying the rule of interpreting language in its ordinary common sense form as shown by the context, that in this case it means to have "taken a part in"; "had a hand in." In other words, it directly charges the defendants as being of those who were doing the act. It is a broad term and was evidently used by the Legislature advisedly. It was undoubtedly the theory of the Legislature that unless they used a term which would be broad and comprehensive, there could be surreptitious solicitations, assessments, etc., of civil service employees which would not come within the purview of the statute, and to strike down the true construction of this word would, in effect, strike down the entire statute. In construing this word, therefore, as well as in construing the word "during" it is not the function of the court to apply strained and unusual interpretations.

It has a number of times been said sarcastically and somewhat cruelly that everybody is supposed to know the meaning of language except the court. However, my conclusion has been that there can be no misunderstanding as to the meaning of this word "concerned."

The last and most important matter before the court, and to which the court has given considerable time and attention, is as to whether or not the indictment should set forth in what respect the defendants were concerned in these solicitations. Bearing in mind the rule as to fairness to the defendants in charging a crime, we have in substance the indictments, after charging the existence of the Democratic party, executive committee, etc., that the said six individuals were employees of the classified service of the state and that the various sums from each were

solicited and collected and that the defendants then and there were among those who so solicited and collected. That is to say that while others may or may not have been connected with this soliciting and collecting, that the defendants had a hand in it and were either solely or jointly with others active in the collection and solicitation. This form of indictment has been sustained for centuries in other kinds of cases. Where two persons plan to burglarize a house, and one stands on guard and the other actually enters and burglarizes the house, each are indicted in exactly the same language, to-wit, the crime of burglary and larceny, and the state does not have to set forth the part that each took in the burglary or what the particular acts of each were. Likewise, in a case of murder, one who stands guard while the other enters and commits the crime is equally guilty with the one who actually commits the crime and the indictment against each is that of murder in the first degree without setting forth of the exact part that each may have taken in it.

. It must be readily granted, of course, that to be interested or anxious about a solicitation and without actual participation as one of the joint actors constitutes no crime, but actual participation in the crime may be in any of the forms which make one a conspirator. It is conceded by all parties, of course, that one indicted is not entitled to the evidence nor to the witnesses which the state may possess or later discover.

Attention is called to a decision by this branch of the court in *Adams* v. *State,* 14 O. D., 257, where, in the decision, the word "concerned" was held to be insufficient of itself. The language of the court on page 259 of this case, I think, explains itself. If the affidavit in that case had, as in this case, charged the facts —the particulars of the gambling, the name of the party selling the ticket and to whom, and then alleged that the defendants were concerned therein, that case would have presented an entirely different state of facts.

A number of cases have been cited to the court, each of which of course, must have as I have before mentioned, applied the rule to the specific fact before it, and it is quite natural that there should be a variety of opinion both apparently favoring

the position of the prosecuting attorney here as well as that of the defendants.

Occasionally we find language very strong by way of *obiter*. The quotation from the case of *Groenland* v. *State,* 4 N. P., 122, is as follows: "Such definiteness of fact as is plainly within the knowledge of the prosecution and not within the knowledge of an innocent man." If this means that the indictment must charge all the facts, which the prosecutor knows, of course, it must be conceded that that is not the law. But if it means, as I readily construe it to mean, that the ultimate facts must thus be pleaded, we find no conflict with the decision here.

Entertaining these views, the motions to quash in these several cases will be overruled.